IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Carlton Hooker, Jr.

    Plaintiff,

vs.                                                 Case no. 8:22-cv-00956-CEH-SPF

Dept. of Veterans Affairs,

    Defendant.
_____/

## **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, and for the reasons explained below, the Department of Veterans Affairs ("VA") moves for summary judgment. The VA produced the documents requested by Mr. Hooker once his trespass citation was dismissed, thus mooting his FOIA claims.

1. After Carlton Hooker was given a lifetime ban from the premises of the Bay Pines Veteran Affairs Healthcare System under 38 C.F.R. §1.128, he embarked on a years-long, frivolous litigation campaign against the VA and its employees. He appears as a plaintiff in more than twenty-eight actions.

2. The Court has repeatedly declared Mr. Hooker to be a vexatious litigant and on August 9, 2021, entered a pre-filing injunction against him that prevents him from filing "any new action, complaint, or claim for relief against the

Secretary for Veterans Affairs related to his employment, in federal court, state court, or any other forum" that is not signed by a licensed attorney. *Hooker v. Wilkie*, No. 8:20-cv-2557-KKM-JSS (M.D. Fla.), Doc. 26 at 3, ¶ 4.

3. After he brazenly flaunted that pre-filing injunction (Hooker filed at least four actions after entry of that injunction, including this case), the Court recently expanded the injunction to "prevent *any* additional lawsuits brought by him against the VA, its employees, and any agency of the United States, related to his employment and/or the 'ban' imposed by the VA, under any theory, unless filed by a licensed attorney." *Hooker v. United States of America*, No. 8:22-cv-00537-KKM-MRM (August 11, 2022), Doc. 29.[1]

4. Mr. Hooker was also recently a defendant in *United States v. Hooker,* Case no. 8:22-mj-1206-CPT (M.D. Fla.), which concerned a misdemeanor trespass citation issued for Hooker's violation of the "no engagement" order.  The citation was dismissed on April 19, 2022 (Doc. 13).

5. Before the citation was dismissed, Mr. Hooker filed this FOIA action, seeking several documents related to the trespass citation. (Doc. 1, pp. 9-14). Mr. Hooker claims that the VA withheld a number of the documents and has not responded timely to his FOIA appeal. (Doc. 1). Hooker routinely uses the FOIA as part of his abusive litigation tactics against the VA.

---

[1] Hooker also received admonishments and dismissals in *Hooker v. Rosa Sly, et al*, No. 8:22-cv-00957-KKM-AAS and *Hooker v. Virginia Covington, et al.,* No. 8:22-cv-1763-SDM-AAS.

6. In this case, Mr. Hooker seeks "injunctive and other appropriate relief" related to the disclosure and release of agency records he alleges were improperly withheld under FOIA. (Doc.1).

7. On December 17, 2021, even though Mr. Hooker was aware he was not permitted on the premises, Hooker sought medical care at Bay Pines. VA police were alerted to the presence of Mr. Hooker and issued him a citation for trespassing. The citation was issued following Mr. Hooker's medical treatment and occurred outside the doors of the Bay Pines Emergency Room.

8. Thereafter, on December 17, 2021, Mr. Hooker filed a FOIA request for copies of two Investigative Reports prepared by the VA police related to his trespass citation (IR 516-211-285 and IR 516-211-286), as well as a copy of the video footage related to Hooker's trespassing. (Doc. 1-1).

9. On December 19, 2021, Plaintiff requested the following additional information related to the events of December 17, 2021, under the FOIA:

> "Video Surveillance of Veteran, Carlton Hooker Jr. and his wife entering the Release of Information Office from the hallway on December 17, 2021 related to VA Police Incident Report #516-211285."

> "Video Surveillance of all of the times VA Police Lt. Christopher Anglin and Sgt. Michelle Wooton entered and exited the Release of Information Office from the hallway

on December 17, 2021 related to VA Police Incident Report #516-211285."

"Any and all recorded radio dispatch transmissions, and phone call transmissions from VA Police Recorded Line Extension 14111 between Lt. Anglin, Sgt. Wooton, ROI Supervisor, Rosa Sly and OGC Attorney, Karen Mulcahy as it pertains to VA Police Incident Report #516-211285."

"Any duress button notifications from the Release of Information Office of Ms. Rosa Sly related to VA Police Incident Report #516-211285."

"Any Voluntary Witness Statements related to VA Police Incident Report #516-211285 from Release of Information staff."

"Video surveillance of when Mr. and Mrs. Carlton E. Hooker Jr departed Release of Information Office enroute to the Emergency Room for anxiety and chest pains."

"Video Surveillance of Mr. and Mrs. Carlton E. Hooker Jr. entering the Emergency Room waiting room to check in."

"Any and all radio transmissions or recorded phone line transmissions between the Bay Pines VA Police Dispatch, and VA Police Officer Ryan Redlow."

Video surveillance of the time, VA Police Officer, Ryan Redlow entered the VA Police Office located in the emergency room area and exited the area, to walk past Mrs. Amy Hooker, to enter the Emergency Room to arrest Mr. Carlton E. Hooker Jr. on a nonexistent warrant for VA Police Incident Report #516-211285, for which a follow up report would have been done incident to arrest." *Id.* at 2-3.

10. On December 20, 2021, Plaintiff requested copies of all recorded conversations between Mr. Hooker and "the rude VA Police Dispatchers who refused to let me speak to [a] VA Police Lieutenant". *Id.* at 2.

11. On December 23, 2021, Mr. Hooker requested the VA Police Daily Operations Journal for December 17, 2021, and the VA Police Morning Report for December 18, 2021. *Id.* at 1.

12. On January 4, 2021, Plaintiff further requested a copy of all email correspondence between Plaintiff and the Director of the BPVAMC on the dates of December 17 and 18, 2021, all body camera footage related to the issuance of the December 17, 2021, citation for trespassing, and any policies on the use of body cameras. *Id.* at 1.

13. Due to the frequency and repetitiveness of Plaintiff's FOIA requests, the requests were treated as one request.

14. On January 13, 2022, the VA Sunshine Healthcare Network-VISN 8, which includes the BPVAMC, issued an initial agency decision. The decision indicated that 35 pages of documents, 4 surveillance videos, and 11 audio recordings were identified as responsive to Plaintiff's requests after a reasonable search had been conducted.

15. All records were withheld in full after the FOIA Office for the Sunshine Healthcare Network determined that Exemption 7(A) had

applicability as disclosure of the records "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Mr. Hooker was at the time facing criminal charges related to this incident in the Federal District Court for the Middle District of Florida in *U.S. v. Hooker,* Case No.: 22-mj-01206-CPT. On April 19, 2022, the criminal case was terminated. (Doc. No. 13, 22-mj-01206-CPT).

16.   After the dismissal of the trespass citation, the VA, through the undersigned, produced documents response to Mr. Hooker's FOIA requests. *See* July 25, 2022, and August 5, 2022, Correspondence to Hooker enclosing FOIA records, attached hereto as **Composite Exhibit A;** Declaration of Christian F. Elkington, Jr., attached hereto as **Exhibit B.**

## ARGUMENT

Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. *Willy v. Coastal Corp.,* 503 U.S. 131, 136-137 (1992); *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541 (1986). Such power is not to be expanded by judicial decree. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6 (1951). Article III of the U.S. Constitution limits the jurisdiction of federal courts to cases and controversies. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). Any case that becomes moot cannot present a case or controversy as is required by Article III, and district

courts lack jurisdiction to hear such suits. *See Nat'l Adver. Co. v. City of Miami,* 402 F.3d 1329, 1332 (11th Cir. 2005) (*citing Coral Springs St. Sys., Inc. v. City of Sunrise,* 317 F.3d 1320, 1328 (11th Cir. 2004)).

This case is ripe for summary judgment because the VA provided the requested documents to Mr. Hooker, with appropriate redactions applied under Exemption 6 protecting privacy interests. Once a FOIA requester has received all of the information requested, "even if the information was delivered late, his FOIA claim is moot to the extent that such information was sought." *Von Grabe v. U.S. Dept. of Homeland Security,* 440 F. App'x 687, 688 (11th Cir. 2011).

Hooker's FOIA claim is now moot, and the VA is entitled to judgment as a matter of law. "FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. Of Wildlife v. U.S. Border Patrol,* 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for International Dev.,* 484 F. Supp. 2d 68, 73 (D.D.C. 2007)). Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A movant bears the initial burden of demonstrating that there are no genuine issues of material fact, Fed R. Civ. P. 56(c)(1), and all facts and

inferences must be analyzed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). However, conclusory allegations lacking in evidentiary support cannot establish a genuine issue of material fact. *See Pinson v. DOJ,* 236 F. Supp. 3d 338, 353 (D.D.C. 2017) (citing *Greene v. Dalton,* 164 F.3d 671, 675 (D.C. Cir. 1999).

A "defending Agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisburg v. U.S. DOJ,* 627 F.2d 365, 368 (D.D.C. 1980) (citations omitted). An agency may rely on non-conclusory and reasonably detailed declarations to meet their burden. *See Citizens for Ethics & Responsibility in Washington v. Dep't of Labor,* 478 F. Supp. 2d77, 80 (D.D.C. 2007). The VA has produced the requested documents, video, and audio recordings, which this Court acknowledged in its July 29, 2022 Order, citing to an email from the undersigned to Hooker re: the production. (Doc. 24, pp. 2-3). Indeed, Mr. Hooker acknowledged receipt of the documents responsive to his FOIA request in his most recent motion, (Docs. 27, 27-1, 27-2).

Application of Exemption 7

One of the difficulties in responding to Mr. Hooker's actions generally results from his haphazard insinuations of matters wholly unrelated to

advancing a meritorious cause of action. After disregarding the irrelevant portions of his Complaint, this case can be synthesized very simply: Mr. Hooker seeks release of 35 pages of documents, 4 surveillance videos, and 11 audio recordings. (Doc 1 ¶ 11) All of the requested documents were initially withheld in full under FOIA Exemption 7(A) while his trespass citation was pending. (Doc 1-1)

The FOIA generally requires that agencies make records available to the public upon request subject to applicable exemptions, 5 U.S.C. § 552(a)(3)(A) and encourages "public disclosure of information so citizens may understand what their government is doing." *Miccosukee Tribe of Indians of Florida v. U.S.,* 516 F.3d 1235, 1244 (11th Cir. 2008).  "Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." *Miscavige v. IRS,* 2 F.3d 366, 369 (11th Cir. 1993).

In this case, Hooker requested records under the FOIA, specifically video surveillance, police reports, and police dispatch transmissions, and the Agency properly withheld those records in full under Exemption 7(A). 5 U.S.C. § 552(b)(7)(A). At the time of the initial request, Plaintiff was facing criminal charges for his own actions in the Middle District of Florida, (Doc 1), and sought the documents "to contest the criminal charge of trespassing."

(Doc. 1 ¶ 12). Though the criminal case was eventually dismissed, at the time of Plaintiff's initial FOIA request, the criminal case was pending.

Exemption 7(A) allows for a categorical denial of records "compiled for law enforcement purposes" that "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). An Agency may withhold such records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information…could reasonably be expected to interfere with enforcement proceedings." *Id.*

Under Exemption 7 the VA withheld 35 pages of documents, 4 surveillance videos, and 11 audio recordings after determining that release of these documents prepared and compiled for law enforcement purposes could reasonably be expected to interfere with enforcement proceedings. Hooker's only argument that Exemption 7 was improperly applied consists of a bald assertion that "he has a right to review all evidence the VA relied upon as it pertains to the false charge." (Doc. 1 ¶ 12). Hooker does not seriously challenge the actual application of Exemption 7(A), but instead insists incorrectly that the VA was required to turn over the documents under the FOIA. To the contrary, this is exactly the type of information that Exemption

7 protects from release and the VA's initial withholding in this case was proper. *See generally North v. Walsh,* 881 F. 2d 1088 (D.C. Cir. 1989).

Exemption 7(A) is Temporal

Congress recognizes that Exemption 7(A) is applied when "law enforcement agencies ha[ve] legitimate needs to keep certain records confidential. Lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224 (1978). The protections of Exemption 7(A) are temporal in nature. *Id.* at 230-32.  For Exemption 7(A) to have continued applicability a proceeding must remain pending not only at the time of the initial FOIA request but also at the time of decision. *See Sussman v. U.S. Marshals Service,* 494 F.3d 1106, 1115 (D.C. Cir. 2007). In other words, applicability of Exemption 7(A) may expire if proceedings have concluded. *See Costal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 870 (D.C. Cir. 1980).

There is no dispute that at the time of Hooker's FOIA request, he was facing criminal enforcement proceedings. However, the VA recognizes the temporal nature of Exemption 7(A) and agrees that Exemption7(A) no longer applies to the documents Hooker seeks. As a result, the VA produced the responsive documents to Hooker via the undersigned AUSA—with applicable

privacy interest redactions under Exemption 6—on July 25, 2022, and again on August 5, 2022. *See* Exhibit A and Doc. 27.

Once an individual has received all the information requested under the FOIA, even if delivery of the information was untimely, the FOIA claim becomes moot as to that information sought. *See Von Grabe v. U.S. Dep't of Homeland Security,* 440 Fed. Appx. 687, 688 (11th Cir. 2011) (*citing Lovell v. Alderete,* 630 F.2d 428, 430-31 (5th Cir. 1980).

FOIA vs. Criminal Discovery

"Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest [in a particular document[s],'" *U.S. Dep't of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 496 (1994) (citing *U.S. DOJ v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 771 (1989) (quoting *NLRB v. Sears Roebuck & CO.,* 421 U.S. 132, 149 (1975)). In other words, "the identity of the requesting party has no bearing on the merits of his or her FOIA request", *Reporters Comm.* 489 U.S. at 771, and cannot be a consideration when fulfilling a request.

Mr. Hooker admits in his Complaint that he sought the information under the FOIA "in order for him to contest the false criminal charge of trespassing, and his illegal detainment for a non-existent warrant out of Pinellas County, for which he has a right to review all evidence the VA relied

privacy interest redactions under Exemption 6—on July 25, 2022, and again on August 5, 2022. *See* Exhibit A and Doc. 27.

Once an individual has received all the information requested under the FOIA, even if delivery of the information was untimely, the FOIA claim becomes moot as to that information sought. *See Von Grabe v. U.S. Dep't of Homeland Security,* 440 Fed. Appx. 687, 688 (11th Cir. 2011) (*citing Lovell v. Alderete,* 630 F.2d 428, 430-31 (5th Cir. 1980).

FOIA vs. Criminal Discovery

"Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest [in a particular document[s],'" *U.S. Dep't of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 496 (1994) (citing *U.S. DOJ v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 771 (1989) (quoting *NLRB v. Sears Roebuck & CO.,* 421 U.S. 132, 149 (1975)). In other words, "the identity of the requesting party has no bearing on the merits of his or her FOIA request", *Reporters Comm.* 489 U.S. at 771, and cannot be a consideration when fulfilling a request.

Mr. Hooker admits in his Complaint that he sought the information under the FOIA "in order for him to contest the false criminal charge of trespassing, and his illegal detainment for a non-existent warrant out of Pinellas County, for which he has a right to review all evidence the VA relied

upon as it pertains to the false charge, for which the Plaintiff has a scheduled hearing for May 12, 2022." An Agency must disregard the identity of the requester in fulfilling a request and also disregard the purpose for which the records are sought. *See generally Swan v. SEC,* 96 F.3d 498 (D.C. Cir. 1996). Contextual considerations are not permissible under the FOIA, and there is no legal basis to overcome an applicable FOIA exemption because of an individual's desire to gather information for a criminal defense. Instead, the law provides the mechanism to obtain such information under the criminal discovery provisions, not the FOIA.

      Courts have been clear that, regardless of a party's assertions to the contrary, the FOIA was never designed to be a discovery device. In the context of criminal discovery, adoption of Exemption 7(A) was to "prevent a litigant from utilizing the FOIA to obtain premature access to the evidence and strategy to be used by the Government in the pending law enforcement proceeding." *Gould, Inc. v. General Services Admin.,* 688 F. Supp. 689, 705 (D.D.C. 1988) (quoting *Fedders Corp. v. Federal Trade Comm.,* 494 F. Supp. 325 (S.D.N.Y. 1980) ("A major purpose behind exemption 7(A) is to prevent a litigant from utilizing the FOIA to obtain premature access to the evidence and strategy to be used by the Government in the pending law enforcement proceeding. In this regard, it has been noted that such a premature release of

information would tend to show a litigant the "outer limits of the (Government's) case," *New England Medical Center Hospital v. NLRB,* supra, 548 F.2d at 383, and thereby allow him to " "anticipate the (Government's) presentation of evidence,' " *Hunt v. Commodity Futures Trading Commission,* supra, 484 F. Supp. at 50, and to "construct defenses which would permit violations to go unremedied," *Title Guarantee Co. v. NLRB,* supra, 534 F.2d at 491, resulting in the frustration of the proceedings. See also *Goodfriend Western Corp. v. Fuchs*, 535 F.2d 145, 147 (1st Cir.), cert. denied, 429 U.S. 895, 97 S. Ct. 257, 50 L. Ed. 2d 178 (1976); *Kanter v. Internal Revenue Service,* 433 F. Supp. 812, 824 (N.D.Ill.1977); *Firestone Tire & Rubber Co. v. Coleman,* 432 F. Supp. 1359, 1369 (N.D. Ohio 1976)).

Hooker's assertions that he has a right to use the provisions of the FOIA to gather evidence are baseless. In fact, Hooker cannot use the FOIA to circumvent criminal discovery procedures or rely upon any right that may exist in a criminal discovery context to obtain such information in a FOIA context. Hooker's arguments that the Agency's withholding of investigatory law enforcement documents is somehow in error lacks merit. Similar cases have recognized that "[a] major purpose behind Exemption 7(A) is to prevent a litigant from utilizing the FOIA to obtain premature access to evidence" as

14

Hooker believes he had a right to do in this case. *See Fedders,* 494 F. Supp. At 329.

Because withholding of the requested investigatory law enforcement documents at the time of the request was warranted, and because the VA produced the requested documents once Exemption 7(A) was no longer applicable, summary judgment is appropriate in favor of the VA.

### Mr. Hooker is not Entitled to Reimbursement of His Filing Fees

The FOIA authorizes the payment of fess when "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). The trial court has discretion to determine whether a party has substantially prevailed in a FOIA case. *See Chilivis v. SEC,* 673 F. 2d 1205, 1212 (11th 1982).

A party substantially prevails when they can show that the litigation "could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information." *Lovell v. Alderete,* 630 F. 2d 428, 432 (5th Cir. 1980). "The mere fact that the information sought was not released until after the suit was instituted" is insufficient to support an award of attorney's fees. *Id.* at 432 (citing *Cox v. DOJ,* 601 F. 2d 1, 6 (1979)).

Mr. Hooker has not substantially prevailed in this case. The information was released following the conclusion of his criminal trespass

proceeding, when Exemption 7(A) was no longer applicable to the documents he sought. *See* Composite Ex. A, Exhibit B. It was the conclusion of the trespass action, not the filing of this FOIA case, that allowed for the VA's release of the documents. Hooker should not be considered to have "substantially prevailed" in this unnecessary and untimely FOIA action when the only reason the documents were produced were a legally operative change in circumstance relating to his trespass action.

A finding that Hooker "substantially prevailed" would mean that in any case where Exemption 7(A) was properly applied in withholding documents while a criminal case was pending, any requester would merely need to institute FOIA litigation while an enforcement action remains pending—as Hooker did here—then await the conclusion of enforcement proceedings when the protections of Exemption 7(A) also expire and collect fees. A Plaintiff should not receive a windfall anytime an Agency properly applies Exemption 7(A) to withhold documents.

Even if it could be fairly said that Mr. Hooker "substantially prevailed", Mr. Hooker would still not be entitled to receive fees. The Court would need to consider other criteria before awarding fees to include (1) the benefit to the public deriving from the case, (2) the commercial benefit to the requester, (3) the requester's interest in the records, and (4) whether the withholding had a

reasonable basis in law. *See Lovell,* 630 F. 2d at 431-32 (citing *Blue v. Bureau of Prisons,* 570 F. 2d 529, 533 (5th Cir. 1978).

Consideration of these factors clearly indicates that Mr. Hooker is not entitled to any fee recovery in this case. There is no commercial benefit and no public interest or benefit that could be derived from this case. Only Hooker has any interest in these documents and is the only member of the public that could conceivably benefit. Further, the original withholding was appropriate under the FOIA and there was more than a reasonable basis in law to apply Exemption 7(A). Moreover, as he readily admits, Mr. Hooker already received these same documents months ago in criminal discovery. His pursuit of these documents through the FOIA process was punitive in nature and is nothing more than another abusive litigation tactic that diverts resources from litigants with legitimate causes of action. Any request for fees or costs from Mr. Hooker should be denied.

## Conclusion

The VA appropriately applied Exemption 7(A) when initially withholding documents but has since produced the documents Hooker requested, thus rendering his FOIA claims moot. Accordingly, Hooker has no cognizable claim under the provisions of the FOIA for which any relief could be granted and summary judgment in favor of the VA is warranted. Further,

any claim for fees or costs advanced by Hooker under the provisions of the FOIA should also be denied because he has not substantially prevailed and is not entitled to any fee recovery.

WHEREFORE, the Department of Veterans Affairs respectfully requests entry of summary judgment as a matter of law.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ Lacy R. Harwell, Jr.
LACY R. HARWELL, JR.
Assistant United States Attorney
Florida Bar No. 714623
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: 813-274-6000
Facsimile: 813-274-6200
E-mail: randy.harwell@usdoj.gov

Certificate of Service

I certify that on August 22, 2022, I filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will serve all registered users in this case, and mailed a copy to Carlton Hooker, Jr.

/s/Lacy R. Harwell, Jr.
Lacy R. Harwell, Jr.
Assistant United States Attorney